Robert R. Kinas (#011560)
Jonathan M. Saffer (#022004)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630
Telephone: (520) 882-1200
Facsimile: (520) 884-1294
Email: rkinas@swlaw.com
jmsaffer@swlaw.com
Attorneys for JPMCC 2007-CIBC19 Shea Boulevard, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>94TH AND SHEA, L.L.C.,<br><br>Debtor. | Chapter 11 Proceeding<br><br>Case No. 2:10-BK-37387-SSC<br><br>**OBJECTION TO EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL** |

JPMCC 2007-CIBC19 Shea Boulevard, LLC ("JPMCC"), secured creditor and party in interest, by and through undersigned counsel, hereby objects to that certain "Emergency Motion to Approve Use of Cash Collateral" ("Motion") filed by the debtor, 94th and Shea, L.L.C. ("94th and Shea" or "Debtor"), on November 19, 2010. This Objection is supported by the following Memorandum of Points and Authorities, JPMCC's "Notice of Non-consent to Use of Cash Collateral" ("Notice of Non-consent") filed November 23, 2010 in this matter, and all pleadings and papers filed in this matter.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. BACKGROUND**

**A.    The Loan Documents**

1.    On or about May 17, 2007, 94th and Shea executed a "Promissory Note" (the "Note") in favor of Canadian Imperial Bank of Commerce, New York Agency ("Original Lender") through which 94th and Shea promised to pay Original Lender or its "heirs, executors, legal representatives, successors, successors in title, and assigns" the

12254865.1

1. amount of $21,000,000.00, together with interest and other amounts as set forth therein (the "Loan"), a true and correct copy of which is attached to the Notice of Non-consent as Exhibit A and incorporated herein by this reference (as amended, modified, or supplemented, the "Note").

2. On or about May 17, 2007, 94th and Shea, as "Grantor," executed the Deed of Trust for the benefit of Original Lender to secure, among other things, payment of all of the indebtedness and performance of the obligations in connection with the Note and related loan documents. The Deed of Trust relates to certain real and personal property described more specifically therein as the "Property" (hereinafter, the "Property") which relates to a commercial, entertainment, and retail center located at 9400 East Shea Boulevard, Scottsdale, Arizona 85260. In particular, the Property conveyed in the Deed of Trust includes, without limitation, 94th and Shea's interest in the "Real Estate" as defined in the Deed of Trust and on the real property described in Exhibit A attached thereto, all "Improvements" related thereto, all "furniture, furnishings, fixtures, goods, equipment, inventory or personal property owned by Borrower" related to thereto, all easements and other property rights as defined therein, contract rights, all cash funds, deposit accounts and rights to cash defined as "Reserves" therein, the "Leases" and "Rents and Profits" from "Real Estate" or "Improvements" as defined therein, all "General Intangibles," and any and all other rights and interests related to the Property as more specifically defined in the Deed of Trust (the "Collateral"). A true and correct copy of the Deed of Trust is attached to the Notice of Non-consent as Exhibit B and incorporated herein by this reference.

3. On or about May 17, 2007, 94th and Shea, as assignor, executed an "Assignment of Leases and Rents" (the "Assignment of L&R") which "irrevocably, absolutely and unconditionally" assigned to Original Lender all of the current and future "Leases" and "Rents," as defined therein, related to the Property. The Assignment of L&R was recorded with the Maricopa County Recorder on May 18, 2007, and rerecorded to correct the legal description of Parcel No. 2 on September 7, 2007. A true and correct

copy of the recorded Assignment of L&R is attached to the Notice of Non-consent as Exhibit C and incorporated herein by this reference.

4. Original Lender and subsequent assignees perfected their security interest in the Collateral by, among other things, recording a UCC-1 Financing Statement with the Arizona Secretary of State and the Maricopa County Recorder. True and correct copies of UCC Financing Statements and amendments thereto (the "Financing Statements") are attached to the Notice of Non-consent as Exhibit D and incorporated herein by this reference. The Note, Deed of Trust, Assignment of L&R, Financing Statements, and other documents identified therein as loan documents are hereinafter collectively referred to as the "Loan Documents."

**B.    Assignment of the Loan Documents**

5. In accordance with Section 5.29 of the Deed of Trust, 94th and Shea acknowledged and agreed that the Loan would be subject to possible transfers and/or secondary market transactions.

6. On or about April 7, 2010, Original Lender assigned all "right, title, and interest, of any kind whatsoever, in and to the subject note(s) and loan documents," including the Deed of Trust and the Assignment of L&R to CIBC, Inc. On or about May 6, 2010, an "Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Assignment of Assignment of Leases and Rents" (the "CIBC Assignment") was recorded with the Maricopa County Recorder. A true and correct copy of the recorded CIBC Assignment is attached to the Notice of Non-consent as Exhibit E and incorporated herein by this reference.

7. On April 7, 2010, CIBC, Inc. assigned all "right, title, and interest, of any kind whatsoever, in and to the subject note(s) and loan documents," including the Deed of Trust and the Assignment of L&R to Bank of America, N.A., as successor in interest to LaSalle Bank N.A., as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-CIBC19, Commercial Mortgage Pass Through Certificates, Series 2007CIBC19 ("Trustee Bank of America"). On May 6, 2010, an

12254865.1

- 3 -

"Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement" and an "Assignment of Assignment of Leases and Rents" (collectively, the "Bank of America Assignment") was recorded with the Maricopa County Recorder. A true and correct copy of the recorded Bank of America Assignment is attached to the Notice of Non-consent as Exhibit F and incorporated herein by this reference.

8. JPMCC is a subsequent assignee and current holder of the Loan Documents. True and correct copies of the recorded "Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Other Loan Documents" and an "Assignment of Assignment of Leases and Rents" to JPMCC, are attached to the Notice of Non-consent as Exhibit G and incorporated herein by this reference.

**C.    Defaults Under the Loan Documents**

9. There are several mechanic's liens that have been filed related to the Property.

10. There are several separate lawsuits pending against Debtor in the Maricopa County Superior Court related to the Property arising from the mechanic's liens filed on the Property, and certain cases were filed by tenants of the Property, or their respective assignee, or various contractors and subcontractors that performed work on the Property, and relate to the rights and obligations of 94th and Shea under the leases on the Property.

11. Specifically, the following lawsuits have been filed and certain claims are pending involving the Property; (i) *Hernandez Cos., Inc. v. The Charles Morgan Group*, CV2008-024259 (the "Hernandez Litigation"); (ii) *Executive Flooring Sys., Inc. v. The Charles Morgan Group*, CV2008-029670 (the "Executive Flooring Litigation"); (iii) *CJS Enterprises LLC v. 94th and Shea, LLC*, CV2008-030931 (the "CJS Litigation"); (iv) *S&H Steel Co., Inc. v. 94th and Shea, LLC*, CV2009-016231 (the "S&H Litigation"); (v) *TK Interior Construction Co. v. 94th and Shea, LLC*, CV2009-016423 (the "TK Interior Litigation"); (vi) *Bluescope Buildings N. Am., Inc. v. Gort Metals Corp., et al.*, CV2009-025765 (the "Bluescope Litigation"); (vii) *DV Acquisitions LLC v. 94th and Shea, LLC*, CV2009-026685 (the "DV Litigation"); (viii) *Giant Electric Corp. v. 94th and Shea, LLC*,

CV2009-033525 (the "Giant Electric Litigation"); (ix) *Northwest Floor & Wall Co. v. 94th and Shea, LLC*, CV2009-035919 (the "Northwest Floor Litigation"); (x) *S&S Paving & Const., Inc. v. 94th and Shea, LLC*, CV2009-054824 (the "S&S Litigation"); (xi) *Caviness Construction Co. v. 94th and Shea, LLC*, CV2009-036370 (the "Caviness Litigation"); (xii) *RGN Midwest VII, LLC v. 94th and Shea, LLC*, CV2009-036376 (the "Regus Litigation"); and (xiii) *Freedom Glass LLC v. 94th and Shea, LLC*, CV2009-092005 (the "Freedom Glass Litigation") (collectively, the "Lien Litigation").

12. On or about October 23, 2009, JPMCC provided written notice provided to 94th and Shea that the filing of mechanic's liens and institution of litigation by said lien claimants violated the terms of the Deed of Trust and constituted and "Event of Default." In addition, on or about October 15, 2010, JPMCC sent written notice to 94th and Shea of its ongoing monetary default and expressly demanded turnover of all rents from the Property. True and correct copies of such notices are attached to the Notice of Non-consent as Exhibit H and incorporated herein by reference.

13. As a result of Debtor's default and in accordance with its rights under the terms of the Deed of Trust, in its October 23, 2009 notice, JPMCC accelerated the loan and Debtor's secured obligation is presently due and payable.

14. Since October 23, 2009, Debtor has failed to pay all amounts due and owing under the terms of the Loan Documents. Among other payment defaults, Debtor has not made any payments whatsoever since June 2010.

15. Under the Loan Documents, Debtor was obligated to pay taxes associated with the Property. Debtor has failed and refused to satisfy its tax obligations related to the Property. As a result of such failures, JPMCC was required to make payments to satisfy the outstanding tax obligations related to the Property and may be required to make additional payments in the future.

16. As of November 19, 2010, Debtor remains in payment default under the terms of the Note for its failure to pay principal, late fees, insurance, taxes, and accrued and accruing interest. Additional fees, costs, and interest continue to accrue under the

12254865.1

- 5 -

terms of the Loan Documents.

17.     To date, Debtor has failed to turnover any rents or leases to JPMCC related to the Property.

18.     To date, Debtor has failed and continues to fail to pay the amounts due and owing to JPMCC and is otherwise in breach of the terms of the Loan Documents.

19.     Debtor has executed a lease agreement with 94 Hundred Corporate Center LLC ("94 Hundred Corporate Center"), which is owned and operated by insiders of the Debtor pertaining to the Property. A true and correct of such "Lease Agreement" (the "Related Party Lease") is attached to the Notice of Non-consent as Exhibit I and incorporated herein by reference.

20.     Pursuant to Sections 1.10(a) and (d) of the Deed of Trust, JPMCC's consent is required for the Related Party Lease. JPMCC has not provided consent for the Related Party Lease.

21.     JPMCC is currently unaware of whether the Related Party Lease is in effect or whether any party to the Related Party Lease has entered into any agreements with any third parties as a result thereof.

22.     As confirmed in the Motion, Debtor is currently receiving monies from third parties related to Debtor's possession, use, or control of the Property identified in the Related Party Lease.

23.     Despite demand, no payment has been made under the Loan Documents and the outstanding indebtedness remains due and owing and the outstanding defaults under the Loan Documents have not been cured.

**D.     Post-Default Events and Bankruptcy Filing**

24.     On November 19, 2010 (the "Petition Date"), Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

25.     Prior to the Petition Date, JPMCC had filed a complaint and application for the appointment of a receiver in the Maricopa County Superior Court. Based on Debtor's bankruptcy filing, JPMCC will not seek the appointment of a receiver in the state-court

action while this case is pending.

26. JPMCC's basis for seeking the appointment of a receiver was two-fold. First, several mechanic's liens and lawsuits related to the mechanic's liens have been filed against the Property. To date, Debtor has failed to remove the mechanic's liens or otherwise satisfy the liens against the Property. Second, Debtor and/or 94 Hundred Corporate Center continue to operate the Property as a mixed-use commercial, entertainment, and retail center without any payment to JPMCC of the amounts due under the Loan Documents. Debtor is either collecting monthly rents from 94 Hundred Corporate Center and the other tenants or is allowing 94 Hundred Corporate Center to operate the Property without requiring payment of rent.

27. Pursuant to, among other things, the Deed of Trust, JPMCC possesses a valid, perfected, and enforceable first priority security interest in and to, among other things, the Property and the Collateral.

28. In particular, the rents, deposits, profits, damages royalties, and ALL income related to the Property constitute JPMCC's cash collateral pursuant to 11 U.S.C. § 363.

29. JPMCC has received no payments from Debtor since June 2010; nor has Debtor provided any accounting for how monthly income and receivables have been spent, or why payments have not been forthcoming.

30. JPMCC has requested Debtor provide express written information pertaining to the items contained in its proposed budget attached to its Motion (the "Budget"). However, to date Debtor has not provided any information whatsoever.

## II. LEGAL ARGUMENT

**A.     Standard for Use of Cash Collateral and Adequate Protection.**

31. Section 363 of the Bankruptcy Code prohibits the use of cash collateral by a debtor-in-possession without the consent of either the creditor with an interest in such collateral or court authorization. 11 U.S.C. § 363(c)(2). As of the filing of this Objection, JPMCC has not consented to the Debtor's proposed use of Cash Collateral. Accordingly,

12254865.1

- 7 -

1 absent JPMCC's consent, the Debtor may only use JPMCC's Cash Collateral upon Court approval and upon compliance with the requirements of Title 11.

32. Pursuant to 11 U.S.C. §§ 361 and 363, the Court cannot approve the Debtor's proposed use of JPMCC's Cash Collateral, over JPMCC's objection, unless the Debtor demonstrates that JPMCC is adequately protected by such use. *See In re Scottsdale Medical Pavilion*, 159 B.R. 295, 302 (9th Cir. BAP 1993) ("in all cases the debtor must provide adequate protection of the creditor's interest as a condition of using cash collateral"). The requirement of adequate protection is mandatory. *See Freightliner Market Dev. Corp. v. Silver Wheel Freightlines, Inc.*, 823 F.2d 362, 367 (9th Cir. 1987). The Debtor has the burden of proof on this issue. *See* 11 U.S.C. § 363(p)(1).

33. Adequate protection is determined on a case-by-case basis, but "its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).

34. Pursuant to Bankruptcy Rule 4001(b)(2), the Court may authorize use of cash collateral on an emergency basis, but must limit the scope of Debtor's use to ONLY those amounts as are necessary to prevent "immediate and irreparable harm" to the estate pending a final hearing.

**B. The Budget Contains Several Unexplained and Questionable Line Items.**

35. Debtor's proposed Budget contains several unexplained and questionable items (the "Questionable Budget Items") that this Court should heavily scrutinize or reject outright, including: (a) $1,250.00 in monthly expenses for a charity event and $1,000.00 per month for a vehicle; (b) $4,000.00 in monthly expenses for a purported controller fee contract; (c) $10,000.00 per month for an alleged asset management fee; (d) $6,000.00 in monthly expenses for "Tenant Bill Backs;" and (e) an expense of $3,252.00 in December for "Tax Savings." These items total $22,250.00 in monthly expenses, with $25,502.00 for December. Debtor's Budget fails to describe these items in any way, or explain why they are necessary to preserve and protect the property, or are necessary to prevent immediate and irreparable harm.

12254865.1

- 8 -

36. JPMCC has expressly requested that Debtor provide written information pertaining to the items in its Budget, including the Questionable Budget Items listed above. Debtor has failed to provide any written explanation verifying the controller fee contract, including why it is necessary for the Property and what entities are parties. Debtor has not explained why it must spend money toward a charity event to operate the Property or for what purpose the vehicle would be used. Further, JPMCC has received no written explanation why Debtor must spend a monthly asset management fee to operate the Property, especially in light of the fact that it appears to be paying a property management fee as well. Nor has Debtor explained what tenant charge backs are or why it must spend money for "tax savings" in December to operate the Property.

37. Debtor's Budget also includes other Questionable Budget Items, such as $1,000.00 for insurance, but the Budget does not explain whether it is a Property policy or some other policy. Similarly, the Budget contains $1,000.00 in monthly miscellaneous expenses and $950.00 in monthly office expenses, but fails to provide any information about those expenses. Further, the Budget contains $500.00 per month for holiday decorations and $2,000.00 for monthly legal fees. Here again, the Budget is silent as to why either fee is absolutely necessary to operate the Property.

38. Most of the Questionable Budget Items appear to be disguised payments to Debtor's insiders. Any authorization to use cash collateral should exclude payment of these Items unless Debtor explains these Items and demonstrates that they are necessary to prevent immediate and irreparable harm to the estate.

**C.     JPMCC Is Entitled To Adequate Protection.**

39. Pursuant to the Loan Documents, and in particular, the Deed of Trust and UCC-1, JPMCC possesses a valid, perfected, and enforceable lien in and to all of the Debtor's operating assets, receivables and income from operations, including any and all rents, lease payments or cash derivatives or other proceeds derived therefrom, including cash and accounts receivable ("Cash Collateral").

40. Under the Bankruptcy Code, and notwithstanding any other provision of

12254865.1

§ 363, "at any time, on request of an entity that has an interest in property . . . proposed to be used, sold or leased by the [Debtor], the court, with or without a hearing, *shall* prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added). JPMCC is a party with such an interest in all of the Debtor's assets and it hereby makes such a request. JPMCC requests that the Court prohibit the Debtor's use of cash collateral, and its use of the any of the other JPMCC collateral, unless JPMCC receives a senior, secured replacement lien on assets that are not now subject to JPMCC's lien and that have an undisputed value in an amount greater than the amount of Debtor's proposed use of JPMCC's Cash Collateral.

**D.     Debtor Has Not Met Its Burden in Proving Adequate Protection.**

41.     As indicated above, before it is entitled to use any of JPMCC's Cash Collateral, Debtor has the burden of proving that JPMCC has adequate protection. *See* 11 U.S.C. § 363(p)(1); *In re Scottsdale Medical Pavilion*, 159 B.R. at 302.

42.     In its Motion, Debtor argues that JPMCC is adequately protected because JPMCC's Cash Collateral will be used to preserve, maintain and improve the Property. However, none of the Questionable Budget Items appear to be aimed at preserving or improving the Property. Rather, they appear to be payments to insiders disguised as Property expenses.

43.     Moreover, the Budget relies heavily on monthly income from 94 Hundred Corporate Center, an entity related to the Debtor. As mentioned above, JPMCC has not provided consent to this Related Party Lease, and JPMCC does not even know at this time whether the Related Party Lease is in effect or not. Debtor's heavy reliance on the purported monthly income from its related entity does not provide JPMCC with adequate protection.

44.     In addition, Debtor's Budget states that its monthly debt service for mortgage and interest is $0.00. First, this is inaccurate. Under the Loan Documents, Debtor is expressly required to make monthly payments to JPMCC in consideration for the Loan it obtained. Second, Debtor's failure to make monthly payments as required

under the Loan Documents was one of the reasons, among others, that JPMCC initiated foreclosure proceedings (which are now stayed pending the instant action). If Debtor continues to fail making monthly mortgage and interest payments, such failures after filing bankruptcy constitute the proper cause for JPMCC to obtain relief from automatic stay. *See*, *e.g.*, *In re Delaney-Morin*, 304 B.R. 365, 370 n.3 (9th Cir. BAP 2003), citing *In re Jones,* 189 B.R. 13 (Bankr. E.D. Okla. 1995). In any event, Debtor's admission that it will disregard its obligation to make required monthly mortgage and interest payments fails to provide JPMCC with adequate protection.

45. Further, Debtor claims that any net profits after operating the Property will be held and sequestered. If Debtor's Budget is accurate, which is skeptical given the reasons set forth herein, Debtor will have net profits on a monthly basis. Debtor's Motion provides no plan of how or where any such net profits will be held and sequestered. The Debtor has provided no adequate protection that any profits will actually be sequestered.

46. Debtor also requests this Court compel JPMCC to endorse a purported insurance check relating to purported hail damage to the Property. However, the Debtor provides no supporting documentation whatsoever that (a) the damage occurred; (b) it filed a claim with its insurance carrier; (c) it requested and received bids to repair the purported damage; or (d) the insurance carrier, if a claim was submitted, will issue a check. JPMCC has requested copies of the insurance claim as well as any estimates debtor has obtained from contractors, but so far Debtor has provided no documentation.

47. Absent supporting documentation or any evidence whatsoever, JPMCC cannot determine the validity of Debtor's claims, and this Court should not compel JPMCC to endorse any check, if such check is actually forthcoming, unless and until Debtor provides evidentiary support for its claims.

48. Based on the foregoing, it is clear that the information contained in the Motion is inadequate to meet Debtor's burden of proof in establishing adequate protection. JPMCC's interest in Cash Collateral is not adequately protected, and cannot be unless additional information is provided and additional protective measures instituted.

12254865.1

### E. The Budget Does Not Specify What Amounts Are Necessary To Spend on an Emergency Basis to Avoid Irreparable Harm.

49. Pursuant to Bankruptcy Rule of Procedure 4001(b)(2), the court may conduct a preliminary hearing on a motion seeking use of cash collateral prior on an expedited basis, but "may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankr. R. Proc. 4001(b)(2).

50. Debtor fails to specify in its Motion what amounts it MUST spend in order to avoid irreparable harm to the estate in its Motion. Indeed, the Debtor's Budget does not discuss what other amounts must be immediately spent in the next seventy-two (72) days to sustain operations. Many of the expenses contained in the Budget do not appear to require immediate payment. For example, Debtor does not specify whether or why the payment of $14,000 per month in controller and asset management fees is absolutely necessary to sustain operations, especially in light of the fact that Debtor is already paying a property manager. Debtor also does not identify whether or why paying for holiday decorations or a charity event is absolutely necessary to operate the Property.

51. If the Court does authorize any use of Cash Collateral on an emergency basis, it should only do so for a short period of time, not to exceed one (1) month, and require the Debtor to submit a revised Budget during this interim period that restricts the use of cash to expenses necessary to avoid irreparable harm.

### F. The Court Should Require Debtor to Make Monthly Adequate Protection Payments.

52. Debtor has failed to show that JPMCC has adequate protection. Based on this failure and the numerous Questionable Budget Items identified in the Budget, Debtor should be required to make monthly adequate protection payments to JPMCC.

53. As described above, Debtor's Budget utterly fails to explain the monthly expenses or why such expenses are necessary to operate the Property. The Questionable Budget Items total approximately $25,000.00 per month.

54. In spite of these unexplained and expensive requested monthly expenditures,

12254865.1

- 12 -

Debtor claims in its Budget that it cannot pay JPMCC the monthly payments it is contractually bound to under the express terms of the Loan Documents. If the Questionable Budget Items, which appear to be disguised payments to Debtor's insiders, are removed from the Budget, then Debtor would have sufficient funds to make significant monthly Loan payments to JPMCC.

55. If the Court does authorize any use of Cash Collateral on an emergency basis, it should do so only on the express condition that Debtor makes monthly adequate protection payments to JPMCC, and in an amount no less than the monthly non-default interest-only payments that are due and still accruing under the Loan.

### G. The Court Should Condition Any Use of Cash Collateral on Debtor Providing a Comprehensive Year-to-Date Accounting of Operations.

56. JPMCC has not received any payment on the loan for at least six months. At the same time, Debtor appears to have been collecting more monthly rents and other revenue from the Property than it has spent.

57. JPMCC is entitled to know how Debtor has spent its Collateral collected pre-petition, and whether any of its Collateral has been misappropriated, or paid to or for the benefit of insiders.

58. As a condition of any use of Cash Collateral, the Court should require Debtor to provide a comprehensive year-to-date accounting of operations for the Property so that JPMCC can ensure that its Cash Collateral is safe in the hands of those principals that are currently managing the Debtor.

### III. CONCLUSION

As set forth above, in the absence of consent by JPMCC, Debtor may not use Cash Collateral without showing that JPMCC is adequately protected. As of the filing of this Objection, JPMCC has not consented to the Debtor's use of Cash Collateral. The Motion should, therefore, be denied absent a showing by Debtor that JPMCC is adequately protected. JPMCC reserves the right to amend or supplement this Objection at any time prior to the hearing on the Motion.

12254865.1

- 13 -

WHEREFORE, JPMCC respectfully requests that the Court (i) sustain this Objection to the Motion; (ii) require Debtor to provide adequate protection for any use of Cash Collateral, including a YTD accounting and payments in an amount no less than non-default interest-only payments due under the Loan; and (iii) grant such further relief as is required by law.

RESPECTFULLY SUBMITTED this 30th day of November, 2010.

SNELL & WILMER

By /s/ Jonathan M. Saffer (#022004)
Robert R. Kinas
Jonathan M. Saffer
One South Church Street, Suite 1500
Tucson, AZ 85701-1294
Attorneys for
JPMCC 2007-CIBC19 Shea Boulevard, LLC

Copy of the foregoing served electronically or mailed by United States Postal Service on November 30, 2010 to the following:

John J. Hebert
Mark W. Roth
Philip R. Rudd
POLSINELLI SHUGHART, P.C.
One East Washington Street, Suite 1200
Phoenix, AZ 85004
jhebert@polsinelli.com
mroth@polsinelli.com
prudd@polsinelli.com
Counsel for Debtor

Mary B. Martin, Esq.
POLSINELLI SHUGHART, P.C.
3636 N. Central Ave, Suite 1200
PHOENIX, AZ 85012
mmartin@polsinelli.com
Attorneys for Debtor

12254865.1

- 14 -

U.S. Trustee
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

20 Largest Unsecured Creditors

s/Melanie Montenegro

12254865.1

- 15 -